**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

SURF BOARDS BY DONALD TAKAYAMA, LLC,

    Plaintiff,

v.

SURF TECHNICIANS, LLC,

    Defendant.

Case No. 3:25-cv-02466-GPC-DEB

**ORDER GRANTING THE MOTION TO DISMISS**

**[ECF No. 7]**

This case involves a licensing agreement for the manufacture and distribution of Donald Takayama branded surfboards.  Before the Court is Defendant's motion to dismiss Plaintiffs' complaint. ECF No. 7. The motion to dismiss has been fully briefed. ECF Nos. 9, 12. For the reasons below, the Court GRANTS Defendant's motion to dismiss.

## FACTUAL BACKGROUND

Donald Takayama was a world-renowned surfboard shaper whose four distinctive board designs and trademarks are well recognized in the surf industry. ECF No. 1 ("Compl.") ¶ 12. Plaintiff Surf Boards by Donald Takayama, LLC ("Plaintiff") was formed to protect Takayama's legacy and licenses its marks only under strict quality and

-1-

approval standards to ensure each board bearing the Donald Takayama name upholds his reputation. *Id*. ¶ 1.

Defendant Surf Technicians, LLC ("Defendant") "is a pioneer in developing new and sustainable surfboard technologies and innovative manufacturing methods…[and] collaborates with the world's leading surfboard designers [to] distribute[] performance-enhancing boards across the globe." ECF No. 7 ("Mot.") at 4.[1]

On August 17, 2015, Plaintiff and Defendant entered into a written licensing agreement ("Agreement"), granting Defendant limited rights to use the Donald Takayama trademarks on surfboards meeting strict quality standards. Compl. ¶ 13. The Agreement included an initial five-year term, with automatic renewals for successive three-year periods unless a party terminated the Agreement via a written notice 30 days prior to the end of any such extension. ECF No. 1-2 at 8. It also included a provision for termination of the contract in face of a breach. That section states:

> "Either party shall have the right to terminate this Agreement immediately upon written notice to the other party in the event of the other party's material breach of any of the terms of this Agreement, where such breach remains uncured by that party for a period of thirty (30) days following written notification from the non-breaching party of such breach."

ECF No. 1-2 at 9.

The Agreement is currently within its second renewal period, which extended the term to August 17, 2026. Mot. at 6.

On March 7, 2025, Plaintiff sent Defendant a notice of material breach, a cease-and-desist letter, and an exit contract. Compl. ¶¶ 14, 24. The notice describes seven alleged breaches. Specifically, Plaintiff claimed that Defendant (1) breached Section 1(B) by not providing an approval process and not obtaining written approval from the

---

[1] Throughout the order, the pagination for docketed documents is derived from the numbering generated by the ECF system.

Plaintiff before manufacturing and releasing "In the Pink Tuflite Pro" and "Tuflite Pro," (2) breached Section 2 by not providing written notice of review of royalties, (3) breached Section 3(C) by not responding to or resolving inconsistent soft-top board quality when notified, (4) breached Section 3(G) by moving manufacturing facilities from Thailand to China for some board production without notification and which created inferior products, (5) breached Section 7(B) by not providing samples and not obtaining approval forms for "In the Pink Tuflite Pro" and "Tuflite Pro" before manufacture and release, (6) breached Section 7(C) by not providing samples, which would allow Plaintiff to evaluate a deviation from any approved designs, and (7) breached Section 7(D) by providing Plaintiff no opportunity to inspect quality control of "In the Pink Tuflite Pro" and "Tuflite Pro." ECF No. 1-3 at 1-4; *see* Compl. ¶¶ 16-21.[2] The notice concludes with Plaintiff "request[ing] the execution of [a] new [exit] contract, which engages the immediate and automatic termination of the current contract, and addendum dated November 19, 2017, as relief being sought based upon the subject breaches[ and] that Surf Technicians review and approve the new Licensing Agreement, dated and submitted to them on March 7, 2025." ECF No. 1-3 at 4.

The cease-and-desist letter further mirrors the notice and demands Defendant "immediately and fully" cease and desist from all manufacturing, distribution, or sale of products with Plaintiff's intellectual property, terminate all licensing rights, cease manufacture and sale of all similar products, end all marketing and representation, and accept the exit contract. ECF No. 1-4 at 3. The letter also threatens the initiation of legal proceedings if Defendant does not comply to the demands within seven days. *Id*.

On March 14, 2025, Defendant replied to Plaintiff, disputing Plaintiff's assertions. Compl. ¶ 25. This included claiming the alleged breaches were non-existent, cured, or not material. *Id*. Plaintiff disputes Defendant's responses.

---

[2] Though not mentioned in the notice, Plaintiff also states that it "has reason to believe that the royalties it has been receiving from [Defendant] are not in the amount it should have been receiving pursuant to the terms of the agreement." Compl. ¶ 34.

-3-

Though the parties continued to communicate, Plaintiff alleges the Defendant was unable to cure the identified breaches. *Id*. ¶ 29. Thus, for Plaintiff, the Agreement was terminated on April 6, 2025, which was 30 days after the notice of material breach was sent to Defendant. *Id*.

On July 18, 2025, Plaintiff extended a written offer to mediate the dispute in good faith. *Id*. ¶ 30. Defendant did not reply to that offer. *Id*. On August 18, 2025, Plaintiff followed up, seeking a response, but received no reply from Defendant. *Id*. ¶ 31.

Despite the alleged termination of the license and Plaintiff's demands, Defendant continues to manufacture and sell Donald Takayama branded products. *Id*. ¶ 32. The Agreement does contain a limited sell-off provision to dispose existing, approved inventory after termination. *Id*. ¶ 39. However, Defendant has not delivered a complete listing of its purchase orders as provided by the Agreement. *Id*. ¶ 40. Defendant also continues to promote its relationship with Plaintiff and still actively sells at least 17 products bearing Takayama marks on its website. *Id*. ¶ 41.

## PROCEDURAL HISTORY

On September 19, 2025, Plaintiff filed a complaint. ECF No. 1. The complaint alleged (1) breach of contract, (2) violation of federal trademark infringement and unfair competition, 15 U.S.C. § 1114, (3) violation of federal unfair competition, 15 U.S.C. § 1125(a), (4) violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*., and (5) violation of unfair competition under California common law. *Id*.

On October 31, 2025, Defendant filed a motion to dismiss, arguing that Plaintiff has failed to state a claim. ECF No. 7. On November 26, 2025, Plaintiff filed a response in opposition. ECF No. 9 ("Opp."). On January 9, 2026, Defendant filed a reply. ECF No. 12 ("Rep.).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint and whether it has "state[d] a claim upon which relief can be granted." Fed. R. Civ. P.

-4-

12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains factual matter that "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is facially plausible when the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. In reviewing the plausibility of a complaint, courts must "accept factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party."  *Dent v. Nat'l Football League,* 968 F.3d 1126, 1130 (9th Cir. 2020).  But courts do not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023).  Ultimately, the court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663.

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## DISCUSSION

Defendant moves to dismiss, arguing Plaintiff fails to state a claim under the Lanham Act and state law. Mot. at 11, 14. Defendant contends that its subject licensing agreement with Plaintiff authorizes it to continue to use Plaintiff's trademarks and that the purported termination of the agreement was improper due to a failure to provide adequate notice and opportunity to cure any breaches. Mot. at 15-16. In response,

Plaintiff argues that the Agreement was breached by Defendant and validly terminated under the terms of the Agreement. Opp. at 7, 9, 12 Consequently, Defendant's continued use of the trademarks is unauthorized and violates the Lanham Act. *Id*. Plaintiff also maintains its state law unfair competition claims are properly pled and its breach of contract claim is independently sufficient. *Id*. at 15-16.

### I.   Lanham Act Claim

The Lanham Act requires that a licensor demonstrate unauthorized trademark use occurred to prevail against the licensee. Thus, a licensor must necessarily show that it properly terminated the contract authorizing the trademark's use and, subsequently, the former licensee engaged in unauthorized trademark usage. *See Wetzel's Pretzels, LLC v. Johnson*, 797 F. Supp. 2d 1020, 1025 (C.D. Cal. 2011); *Century 21 Real Est. LLC v. All Pro. Realty, Inc.*, No. 10-CV-2751, 2011 WL 221651, at *8 (E.D. Cal. Jan. 24, 2011); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1308 (11th Cir.1998). "Termination of a [license] agreement may be improper under either the terms of the agreement or state [] laws." *Century*, WL 221651, at *8.

In this case, Plaintiff claims to have terminated the license agreement pursuant to Section 9(C). Opp. at 5. Section 9(C) of the Parties' Licensing Agreement controls proper termination in the face of a breach and provides:

> "Either party shall have the right to terminate this Agreement immediately upon written notice to the other party in the event of the other party's material breach of any of the terms of this Agreement, where such breach remains uncured by that party for a period of thirty (30) days following written notification from the non-breaching party of such breach."

ECF No. 1-2 at 9.

Defendant argues that Plaintiff did not comply with the requirements of Section 9(C) by providing an invalid and ineffective notice, and thus, the Agreement was not effectively terminated. Mot. at 11-15. Plaintiff, however, maintains that its multiple

notices validly terminated the agreement or, in the alternative, that the termination was valid because some of the breaches were material and incurable. Opp. at 7-13.

### a. Invalid Notice

If a party attempts to terminate an agreement without affording the proper, bargained-for notice and opportunity to cure, the party has simultaneously failed to terminate and breached the agreement. *See Warner Bros. Int'l Television Distribution v. Golden Channels & Co.*, No. 02-CV-09326-MMM(SHS), 2003 WL 27384425, at *20 (C.D. Cal. Mar. 31, 2003); *Scott v. Pacific Gas and Electric Co.*, 11 Cal.4th 454, 466 (1995) (termination of contract without affording the notice and opportunity to cure constitutes a breach of the agreement); *Sun Microsystems, Inc. v. Microsoft Corp.*, 81 F. Supp. 2d 1026, 1033 (N.D. Cal. 2000) ("If Sun could sue for copyright infringement immediately upon Microsoft's failure to fully meet the compatibility requirements, the remedies scheme would be frustrated and Microsoft would not get the full benefit of its bargained for cure periods.").

"The purpose of giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011); *see IP Glob. Invs. Am., Inc. v. Body Glove IP Holdings, LP*, No. 17-CV-06189-ODW-AGR, 2018 WL 5983550, at *5 (C.D. Cal. Nov. 14, 2018), *amended*, No. 17-CV-06189-ODW-AGR, 2019 WL 121191 (C.D. Cal. Jan. 7, 2019); *Keysight Techs., Inc. v. Mentor Graphics Corp.*, No. C 17-05222 SBA, 2017 WL 7310781, at *6 (N.D. Cal. Sept. 28, 2017). Thus, to accomplish this purpose, the notice must (1) state the receiving party is alleged to be in breach of the contract, (2) specifically identify the alleged material breaches such that the receiving party is informed on what is required to cure the breach, and (3) a deadline for the allegedly breaching party to cure. *See Sleash, LLC v. One Pet Planet, LLC*, No. 3:14-CV-00863-ST, 2014 WL 3859975, at *11 (D. Or. Aug. 6, 2014); *IP Glob.*, 2018 WL 5983550, at *5 ("Logically, for a notice to fulfill this purpose, it must sufficiently identify the breach at issue such that the breaching party knows what to cure.").

Here, Plaintiff argues that the March 7 notice was proper because (a) it "expressly identified material breaches and demanded compliance;" (b) the "breaches were incurable;" and (c) the proposed, "optional" exit agreement included with the notice "did not alter the character" of the notice. Opp. at 7. However, Plaintiff's arguments are unconvincing and belied by the content of the Notice provided.

First, there is no dispute that the Notice alleges Defendant was in breach of contract. Second, as to material breaches specified, they can be categorized as ones related to: (1) the design and production of "In the Pink Tuflite Pro" and "Tuftlite Pro" board products; (2) the alleged inconsistent quality of all soft-top boards; (3) the terms regarding the agreement to review the Royalty amount; and (4) the move of manufacturing facilities from Thailand to China for some of the "Soft Top Board" product production.

With respect to the design and production of Tuflite Pro boards, Plaintiff alleges that Defendant failed to obtain approval of the boards prior to the release which, thus, denied Plaintiff the opportunity to approve samples of the boards, evaluate deviation from any approved design or the opportunity to inspect quality control of the Boards. Compl., Ex. B. The description adequately specifies the boards and issues that Plaintiff believes was a breach to put the Defendant on notice. Additionally, to the extent that the quality of a product is important and capable of affecting a brand's reputation, the breaches would potentially be material. Because materiality is generally an issue of fact, the Court finds that the Notice is sufficient in that respect at the motion to dismiss stage. *Fed. Deposit Ins. Corp. v. Air Florida Sys., Inc.,* 822 F.2d 833, 840 (9th Cir.1987) (whether party has breached a contract and whether that breach is material are questions of fact). Thus, the second requirement is met for this breach.

The Notice also generally asserts that Plaintiff notified Defendant of the inconsistent quality of all soft-top boards but Defendant failed to respond or resolve the issues. ECF No. 1-3 at 3. Accepting the allegations as true, the Notice fails to specify which softboards were of a low quality and what made them inferior so that Defendant

could cure these breaches. *Id*. at 2-4. Accordingly, this breach does not satisfy the second requirement.

Next, the Notice also references an agreement that the "parties agree to review the Royalty amount and structure at least 60 days before any extension". *Id.* at 2. Plaintiff claims there was a breach of this provision because "[n]o written notice of review was issued by June 2023." *Id*. The Notice fails to plausibly allege a breach or that it is material.

Finally, the Notice states that Defendant "had moved manufacturing facilities from Thailand to China for some of the "Soft Top Board" product production…[which] produced inferior products." ECF No. 1-3 at 3. What made the products inferior is left unspecified, and given Defendant had already returned production to Thailand as of the date of the Notice, the steps required to cure this breach are unclear.

In addition, to the extent that one or more of the purported breaches is material, the Notice fails to meet the third requirement. The Notice does not provide a thirty-day opportunity to cure as required by Section 9(C) of the Agreement. Instead, it declares an intent to "engage[] the immediate and automatic termination of the current contract, and addendum dated November 19, 2017, as relief being sought based upon the subject breaches." ECF No. 1-3 at 4. The accompanying cease-and-desist letter further mirrors the Notice and demands Defendant "immediately and fully" cease and desist from all manufacturing, distribution, or sale of products with Plaintiff's intellectual property, terminate all licensing rights, cease manufacture and sale of all similar products, end all marketing and representation, and accept the exit contract. ECF No. 1-4 at 3. The letter also threatens the initiation of legal proceedings if Defendant does not comply to the demands in seven days. *Id*. The Court concludes that, as a matter of law, Plaintiff's inclusion of the cease-and-desist letter and exit contract[3] evidences a denial of the

---

[3] In its opposition, Plaintiff argues that the March 7 notice only "proposed an *optional* 'Exit Agreement' [and] the inclusion of a negotiated resolution did not alter its character
(Continued...)

opportunity to cure as it expressly "demands that the Licensee immediately and fully comply with the" termination of all activities and rights associated with the agreement. ECF No. 1-4 at 3.[4]

In support of its position that Plaintiff's Notices satisfied the terms of the Agreement, Plaintiff relies on incurability throughout its argument. Opp. at 7-11. Plaintiff's argument conflates two separate issues. *Id*. A valid notice must meet the requirements outlined above. A breach's incurability, in contrast, does not make a notice valid but, instead, provides an exception to a contract's notice-and-cure provision, as discussed below. *See L.K. Comstock & Co. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 232 (9th Cir. 1989).

Thus, Plaintiff did not provide proper and effective notice as provided for in Section 9(C) of the Agreement.

### b. Incurable Breach

Even if a contract contains a notice-and-cure provision, a party need not comply if the material breach is incurable within the contracted cure period. *See L.K. Comstock & Co. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 232 (9th Cir. 1989) (finding

---

as written notice of breach under Section 9(C)." Opp. at 7 (emphasis added). However, that argument is belied by the cease-and-desist letter attached to the notice which specifically demands Defendant "[a]ccept and execute the attached Exit Contract" and threatens legal action if Defendant does not comply. ECF No. 1-4 at 3.

[4] Plaintiff has argued that it sent multiple communications and notices that satisfy Section 9(C) of the Agreement and attached three exhibits in support. Opp. at 7-9, 12-13, Exs. 1-3. However, these facts and exhibits were not included in Plaintiff's complaint, and the Court is limited to "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice" when ruling on a Rule 12(b)(6) motion to dismiss. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Thus, "the Court may not consider the declaration and exhibits that Plaintiff has attached to its opposition, nor may the Court consider the facts that Plaintiff asserts only in its opposition." *Bd. of Trs. of the Bay Area Roofers Health & Welfare Tr. Fund v. Gudgel Yancey Roofing Inc.*, 225 F. Supp. 3d 1106, 1113 (N.D. Cal. 2016).

Even if they were considered, the facts and exhibits fail to support Plaintiff's position. The additional communications only confirm that Defendant advocated for a thirty-day cure period in response to the March 7 notice and that Plaintiff continued to emphasize its position that the Agreement terminated on March 7. *See* Opp., Exs. 1-3.

---

a 48-hour cure period futile when the breach could not have been cured in 48 hours). Thus, when a cure period is futile, a party can immediately terminate the contract in the face of a material breach.

Here, Plaintiff argues that it did not need to comply with the notice-and-cure provision because several alleged material breaches were incurable. Opp. at 10. Specifically, when Defendant moved manufacturing facilities between Thailand and China, Defendant failed to inform Plaintiff and to obtain approval of the facility moves and the defective boards' production and sale. *See* Compl. ¶¶ 19, 22, 27, 28, 60. In Plaintiff's view, these acts constitute an incurable breach because they (1) destroyed quality control and (2) created irreparable reputational injury. Opp. at 10-11. The Court addresses these arguments in turn.

### i. Quality Control

Plaintiff maintains that "[t]he License Agreement expressly recognizes that certain violations are 'material non-curable breach[es]'" and that the substandard boards produced in Defendant's Chinese manufacturing facility qualified as an incurable breach of quality control. *Id*. at 9-10.

First, the Agreement does expressly identify incurable breaches, specifically in Section 3(A). *See* Opp. at 8. Plaintiff uses this provision to claim that Defendant's breaches were incurable. *Id*. However, Section 3(A) is limited in scope and does not apply to any of the alleged breaches. ECF No. 1-2 at 4. Instead, Section 3(A) provides that Defendant (1) will develop and construct board production molds, tooling, and manufacture templates, (2) is not obligated to initiate or continue manufacturing of specific boards, and (3) cannot revive manufacture of particular board designs where production of those boards have been discontinued for one full year. ECF No. 1-2 at 4. Only a breach of Section 3(A)'s obligations constitute "a material non-curable breach" of the Agreement. *Id*. The breaches that Plaintiff has alleged, however, are not covered by Section 3(A).

-11-

No. 25-cv-2466-GPC-DEB

Second, the Agreement outlines that the alleged material breach with respect to quality control *is* curable. Section 7(D) provides: "If at any time Licensor determines, in its sole reasonable discretion, that a Board is of substandard quality than the approved Samples, Licensor will immediately provide Licensee notice of the claimed defect(s). Licensee shall immediately cease production and distribution of said Board or Boards until quality control is re-established to the reasonable satisfaction of Licensor." *Id.* at 7-8. This section reveals that the Parties anticipated a potential breach of quality, and as the Parties bargained for, the Defendant is allowed to take the necessary actions to re-establish quality control upon notice. As discussed earlier in Section I(a), Plaintiff has alleged in a conclusory fashion that Defendant failed to respond to complaints regarding inconsistent quality of all soft-top boards.  ECF No. 1-3 at 3. Ultimately, Section 7(D) provides a means to resolve substandard quality issues and Plaintiff has not plausibly alleged that it complied with Section 7(D) to address the alleged inconsistent quality.

### ii.  Irreparable Reputational Injury

Plaintiff also alleges that the substandard, inferior quality of these boards created reputational injury, which is irreparable. Opp. at 10-11. Plaintiff emphasizes that it suffered reputational harm and that courts have routinely recognized this harm as irreparable in TRO and preliminary injunction contexts. Opp. at 11.

Assuming incurability and irreparability in the TRO and preliminary injunction contexts are equivalent, the 9th Circuit has only found that "[e]vidence of loss of control over business reputation and damage to goodwill *could* constitute irreparable harm." *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (emphasis added). To support a finding of irreparability, there must be "concrete evidence" of that harm. *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018); *see id.* ("Even if we comb the record for support or inferences of irreparable harm, the strongest evidence, albeit evidence not cited by the district court, is an email from a potential customer complaining to Marshak's booking agent that the customer

wanted Herb Reed's band rather than another tribute band. This evidence, however, simply underscores customer confusion, not irreparable harm.").

Plaintiff argues that "even if Surftech disputes whether the breaches were incurable, that dispute is factual and cannot be resolved on a Rule 12(b)(6) motion." Opp. at 12. While the Court accepts as true well pled allegations as to injury, Plaintiff is required to plausibly allege "irreparable reputational harm". Here, however, beyond making the conclusory statement that Plaintiff has suffered reputational harm, Plaintiff has offered no factual allegations that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint does not point to any customer complaints or unfavorable publicity. It only alleges that the boards were substandard, released into the marketplace, and in a customer's possession. Compl. ¶ 27, 28, 60. Without any factual allegations to support an inference of reputational harm, Plaintiff cannot sufficiently plead incurability.

Accordingly, the Complaint has failed to plausibly allege the breaches are incurable, and Plaintiff is not excused from complying with the Agreement's notice-and-cure provision. Thus, the Agreement has not been properly terminated, and Plaintiff has failed to plausibly plead its Lanham Act claim.

## II. State Law Claims

### a. California Unfair Competition Claims

Plaintiff's unfair competition claims under California Business & Professions Code § 17200 and California common law rely on the same alleged unauthorized use of Plaintiff's marks. Because, as discussed above, the contract is not terminated, these claims also fail.

### b. Breach of Contract

As the Court dismisses the federal claim which supplied original jurisdiction, the Court also declines to exercise supplemental jurisdiction over the remaining state claim.

-13-

*See* 28 U.S.C.A. § 1367(c)(3); *Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001).

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendant's motion to dismiss the complaint with leave to amend. Plaintiff shall file an amended complaint within 21 days of the Court's Order.

**IT IS SO ORDERED.**

Dated:  February 4, 2026

Hon. Gonzalo P. Curiel
United States District Judge

-14-

No. 25-cv-2466-GPC-DEB